United States District Court
Northern District of California

1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    CYNTHIA GUTIERREZ, *et al*.,                    Case No.  16-cv-02645-SI

              Plaintiffs,
8
                                                    **ORDER GRANTING IN PART**
9          v.                                       **DEFENDANT'S MOTION TO DISMISS**
                                                    **AND GRANTING LEAVE TO AMEND**
10   SANTA ROSA MEMORIAL HOSPITAL, *et*
     *al*.,                                         Re: Dkt. No. 10
11
              Defendants.

12

13         Defendant's motion to dismiss the complaint is scheduled for a hearing on October 14,

14   2016. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for

15   resolution without oral argument and VACATES the hearing.   For the reasons set forth below, the

16   Court GRANTS IN PART defendant's motion and GRANTS plaintiffs leave to amend the

17   complaint. **The amended complaint must be filed no later than October 24, 2016.**

18

19                                       **BACKGROUND**

20         On May 17, 2016, plaintiffs Cynthia Gutierrez, Jose Huerta, S.M.H., R.H., and A.H. filed

21   this lawsuit against Santa Rosa Memorial Hospital ("SRMH"), St. Joseph Health, and Does 1-50.

22   Gutierrez and Huerta are married, and S.M.H., R.H. and A.H. are their minor children.   The

23   complaint alleges three causes of action: (1) a violation of the federal Emergency Medical

24   Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; (2) a violation of

25   California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code

26   § 15657; and (3) negligence.

27         The complaint alleges that Gutierrez was 33 years old when she presented to Santa Rosa

28   Memorial Hospital at approximately 3:00 a.m. on February 25, 2015.  Compl. ¶ 1.  Gutierrez is

1   diabetic and had end-stage renal disease, and because of her medical conditions Gutierrez was a

2   frequent patient at SRMH's emergency room *Id.* at ¶¶ 2-3. The complaint alleges that "[o]n this

3   particular occasion, various laboratory and diagnostic tests were ordered. Many of the test results

4   were remarkable for the presence of life-threatening disease. Inexplicably, these 'red flags' were

5   ignored." *Id.* at ¶¶ 32-33. Gutierrez was discharged from the emergency room at approximately

6   7:00 a.m. *Id.* at ¶ 34. Gutierrez was sitting in the waiting room when she collapsed. *Id.* ¶ 35. The

7   complaint alleges that a "Code Blue" was called, and that Gutierrez was resuscitated and

8   transferred to the ICU. *Id.* at ¶¶ 36-37. Gutierrez has remained in a coma, and she has remained

9   at SMRH "despite attempts to transfer her elsewhere." *Id.* at ¶ 40.

10   The complaint alleges that "[d]efendants performed a cursory and inadequate screening,"

11   "ignored even their own test results showing life-threatening, unstable conditions," and that

12   defendants "failed to stabilize" Gutierrez. *Id.* at ¶¶ 41-43. The complaint alleges that "[a]s such,

13   defendants failed to comply with EMTALA requirements to reasonably screen and stabilize." *Id.*

14   at ¶ 44. The complaint also alleges, "Defendants intentionally and recklessly and negligently

15   refused and failed to follow federal law EMTALA and state law and their own policies and

16   procedures all of which mandated medical screening and stabilization [of] CYNTHIA'S

17   emergency medical conditions when she presented to their ER." *Id.* ¶ 45. "Defendants' pattern

18   and practice was to deny and avoid care for indigent and uninsured and underinsured and those

19   with substance and/or mental health issues or apparent questionable immigration status." *Id.* ¶ 46.

20   Defendants have moved to dismiss plaintiffs' claims under EMTALA and California's

21   Elder Abuse and Dependent Adult Civil Protection Act.

22

23   **LEGAL STANDARD**

24   To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to

25   state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

26   (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to

27   "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

28   662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff

United States District Court
Northern District of California

2

1    must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550

2    U.S. at 555, 570.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

3    elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

4    555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

5    enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide

6    the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

7        In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in

8    the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*,

9    580 F.3d 949, 956 (9th Cir. 2009).  However, a district court is not required to accept as true

10   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

11   inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).  As a general rule,

12   the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6)

13   motion. *Lee v. City of L.A*., 250 F.3d 668, 688 (9th Cir. 2001).  However, pursuant to Federal

14   Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as

15   prior court proceedings, without thereby transforming the motion into a motion for summary

16   judgment. *Id*. at 688–89.  If the Court dismisses a complaint, it must decide whether to grant leave

17   to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend

18   even if no request to amend the pleading was made, unless it determines that the pleading could

19   not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

20   Cir. 2000) (citations and internal quotation marks omitted).

21

22                                              **DISCUSSION**

23   **I.    EMTALA**

24        The complaint alleges that defendants "dumped and failed to screen or stabilize" Gutierrez

25   in violation of EMTALA.  Defendants move to dismiss plaintiffs' EMTALA claim on the ground

26   that the complaint fails to set forth sufficient facts in support of either a "failure to screen" or a

27   "failure to stabilize" theory of liability.

28        "[T]he Emergency Medical Treatment and Active Labor Act, commonly known as the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    'Patient Anti–Dumping Act,' [was enacted] in response to a growing concern about 'the provision

2    of adequate emergency room medical services to individuals who seek care, particularly as to the

3    indigent and uninsured.'" *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995)

4    (quoting H.R. Rep. No. 241, 99th Cong., 1st Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 726-

5    27). "If an individual seeks emergency care from a hospital with an emergency room and if that

6    hospital participates in the Medicare program, then 'the hospital must provide for an appropriate

7    medical screening examination within the capability of the hospital's emergency department . . .

8    to determine whether or not an emergency medical condition . . . exists." *Bryan v. Adventist*

9    *Health System/West*, 289 F.3d 1162, 1165 (9th Cir. 2002) (quoting 42 U.S.C. § 1395dd(a));

10   *Eberhardt*, 62 F.3d at 1255-56. An "emergency medical condition" is one "manifesting itself by

11   acute symptoms of sufficient severity (including severe pain) such that the absence of immediate

12   medical attention could reasonably be expected to result in (i) the placing of the health of the

13   individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious

14   dysfunction of any bodily organ or part . . . ." 42 U.S.C. § 1395dd(b)(1)(A). "If the hospital's

15   medical staff determines that there is an emergency medical condition, then . . . the staff must

16   'stabilize' the patient before transferring or discharging the patient." *Bryan*, 289 F.3d at 1165;

17   *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 992 (9th Cir. 2001). The term "to stabilize" means

18   "to provide such medical treatment of the condition as may be necessary to assure, within

19   reasonable medical probability, that no material deterioration of the condition is likely to result

20   from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(A).

21

22       **A.    Failure to screen**

23       Defendants argue that the complaint does not allege facts supporting a "failure to screen"

24   theory of liability because plaintiff does not allege that the hospital either refused to screen her or

25   that the hospital provided her with differential screening. In *Jackson v. East Bay Hospital*, 246

26   F.3d 1248 (9th Cir. 2001), the Ninth Circuit held that "a hospital satisfies EMTALA's 'appropriate

27   medical screening' requirement if it provides a patient with an examination comparable to the one

28   offered to other patients presenting similar symptoms, unless the examination is so cursory that it

4

1  is not 'designed to identify acute and severe symptoms that alert the physician of the need for

2  immediate medical attention to prevent serious bodily injury.'" *Id.* at 1256 (quoting *Eberhardt*, 62

3  F.3d at 1257).

4  The Court concludes that the complaint does not sufficiently allege facts in support of a

5  "failure to screen" theory of liability.  There are no allegations that plaintiff was provided with a

6  screening that was not comparable to that provided to other patients who exhibited similar

7  symptoms.  The complaint does allege that defendants have engaged in a "pattern and practice . . .

8  to deny and avoid care for indigent and uninsured and underinsured and those with substance

9  and/or mental health issues or apparent questionable immigration status."  Compl. ¶ 46.  However,

10  this allegation is conclusory, and the complaint does not explain how this allegation relates to

11  Gutierrez.  Nor are there any allegations that the screening provided to Gutierrez was "at such a

12  minimal level that it properly cannot be said that the screening [was] appropriate."  *Eberhardt*, 62

13  F.3d at 1258. The complaint alleges that the hospital ordered "various laboratory and diagnostic

14  tests," and that these test results showed "life-threatening, unstable conditions."  Compl. ¶¶ 32, 43.

15  The complaint also alleges, without elaboration, that defendants "performed a cursory and

16  inadequate screening."  *Id*. ¶ 41.

17  The Court GRANTS defendants' motion to dismiss the EMTALA claim to the extent that

18  it is predicated on a "failure to screen" theory of liability, and GRANTS plaintiffs leave to amend.

19  If plaintiffs amend this claim, plaintiffs are directed to allege how the screening provided to

20  Gutierrez was not comparable to similarly situated patients and/or how the screening provided was

21  so minimal that it cannot be said to have been appropriate.

22

23  **B.      Failure to stabilize**

24  Defendants contend that plaintiffs failed to plead sufficient facts to support a "failure to

25  stabilize" theory of liability because there are no allegations that defendants diagnosed an

26  emergency medical condition before Ms. Gutierrez's discharge.  Defendants cite cases for the

27  proposition that a hospital does not violate EMTALA if the medical staff treating the patient failed

28  to detect or misdiagnosed an emergency medical condition.  *See Eberhardt*, 62 F.3d at 1259

United States District Court
Northern District of California

5

1   ("[T]he hospital's duty to stabilize the patient does not arise until the hospital first detects an

2   emergency medical condition.  Thus, because the hospital here did not detect the decedent's

3   alleged suicidal tendency, it had no obligation to stabilize this unapparent medical condition.").

4          The Court finds that the complaint sufficiently alleges a "failure to stabilize" claim under

5   EMTALA. The complaint alleges that defendants performed various laboratory and diagnostic

6   tests, that "[m]any of the test results were remarkable for the presence of life-threatening disease,"

7   that defendants ignored the test results showing life-threatening unstable conditions, and that the

8   hospital discharged Gutierrez without stabilizing her emergency medical conditions. It is

9   reasonable to infer from these allegations that the hospital detected – and ignored – an emergency

10  medical condition that required stabilization.  At this stage of the litigation, this is sufficient to

11  state a claim.  The Court also notes that the cases cited by defendants in which courts held that the

12  defendant hospitals did not have a duty to stabilize were all decided on a full factual record on

13  summary judgment.  *See e.g. Bryant*, 289 F.3d at 1166; *Jackson*, 246 F.3d at 1257; *Eberhardt*, 62

14  F.3d at 1259.

15

16  **II.      California's Elder Abuse and Dependent Adult Civil Protection Act**

17         The complaint alleges that Gutierrez was a "dependent adult" under California's Elder

18  Abuse and Dependent Adult Civil Protection Act, and that defendants intentionally and recklessly

19  neglected Gutierrez causing her severe emotional distress and suffering.  Compl. ¶ 56.  Defendants

20  move to dismiss this claim on the ground that the complaint does not allege facts showing how

21  Gutierrez is a "dependent adult" under the statute.  Defendants also contend that plaintiffs have not

22  stated a claim because the complaint does not allege that the defendant health care providers had a

23  caretaking or custodial relationship with Gutierrez.

24         The Elder Abuse and Dependent Adult Civil Protection Act provides heightened remedies

25  to elders or dependent adults who can prove "by clear and convincing evidence that a defendant is

26  liable for physical abuse as defined in [Cal. Welf. & Inst. Code] Section 15610.63, or neglect as

27  defined in Section 15610.57," and who can demonstrate that the defendant acted with

28  "recklessness, oppression, fraud, or malice in the commission of [this] abuse."  Cal. Welf. & Inst.

United States District Court
Northern District of California

1   Code § 15657.  Section 15610.57 defines "neglect" as "[t]he negligent failure of any person

2   having the care or custody of an elder or a dependent adult to exercise that degree of care that a

3   reasonable person in a like position would exercise."  Cal. Welf. & Inst. Code § 15610.57(a)(1).

4

5   **A.     "Dependent adult"**

6   The Act sets forth two ways in which a person between the ages of 18 and 64 may be

7   deemed a dependent adult.  First, the statute provides that "[d]ependent adult means any person

8   between the ages of 18 and 64 years who resides in this state and who has physical or mental

9   limitations that restrict his or her ability to carry out normal activities or to protect his or her

10  rights, including, but not limited to, persons who have physical or developmental disabilities, or

11  whose physical or mental abilities have diminished because of age."  Cal. Welf. & Inst. Code

12  § 15610.23(a).  Second, "[d]ependent adult includes any person between the ages of 18 and 64

13  years who is admitted as an inpatient to a 24-hour health facility."  *Id*. § 15610.23(b).

14  Defendants argue that there are no allegations showing that Gutierrez was a "dependent

15  adult" within the definition of the statute.  Defendants note that the complaint alleges that she was

16  a 33 year-old woman who was employed at the time of her visit to SRMH, and defendants argue

17  that Gutierrez's alleged physical ailments alone do not qualify her a "dependent adult" for

18  purposes of the statute.  Defendants also argue that plaintiffs cannot claim that Gutierrez was an

19  inpatient at the time of the alleged neglect because plaintiffs specifically allege that defendants

20  were neglectful because they did not properly treat and admit Gutierrez.

21  Plaintiffs' opposition does not specifically respond to defendants' arguments. Instead,

22  plaintiffs assert that defendants seek to read the statutory language "too literally," and that by

23  virtue of being gravely ill in the emergency room, Gutierrez "was even more dependent on

24  Defendants than the average person admitted to some other part of the hospital."  Dkt. No. 23 at 3.

25  The Court concludes that the complaint does not allege facts showing how Gutierrez is a

26  "dependent adult" under either of the definitions set forth in the statute.  The Court GRANTS

27  defendants' motion to dismiss this claim and GRANTS plaintiffs leave to amend to allege how

28  Gutierrez qualifies as a "dependent adult."

United States District Court
Northern District of California

7

### B.      Caretaking or custodial relationship

Defendants also contend that plaintiffs have failed to state a claim because the complaint does not allege facts to establish a caretaking or custodial relationship between defendants and Gutierrez.  Defendants rely on *Winn v. Pioneer Medical Group, Inc*., 63 Cal.4th 148 (2016), in which the California Supreme Court held that "a claim of neglect under the Elder Abuse Act requires a caretaking or custodial relationship — where a person has assumed significant responsibility for attending to one or more of those basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance." *Id*. at 155.  Under that standard, the California Supreme Court held that physicians who treated a patient at an outpatient clinic did not have a caretaking or custodial relationship with the patient.  *Id*. at 164-65. The court noted, "[t]he Act seems premised on the idea that certain situations place elders and dependent adults at heightened risk of harm, and heightened remedies relative to conventional tort remedies are appropriate as a consequence.  Blurring the distinction between neglect under the Act and conduct actionable under ordinary tort remedies — even in the absence of a care or custody relationship — risks undermining the Act's central premise.  Accordingly, plaintiffs alleging professional negligence may seek certain tort remedies, though not the heightened remedies available under the Elder Abuse Act." *Id*. at 159-60.

The Court agrees with defendants that the complaint does not allege how defendants had a caretaking or custodial relationship with Gutierrez.  Plaintiffs' opposition does not specifically address this point except to assert that Gutierrez had "custodial and caretaking needs." Dkt. No. 23 at 3.  However, *Winn* holds that there must be a custodial and caretaking *relationship* between the parties in order for a plaintiff to state a claim under the Act.  Accordingly, the Court GRANTS defendants' motion and GRANTS plaintiffs leave to amend.

### III.      Other issues

Defendants' request to dismiss plaintiffs' claim for punitive damages is DENIED in light of the fact that the Court has found that plaintiffs may proceed on their EMTALA failure to stabilize claim.

United States District Court
Northern District of California

1   The Court GRANTS plaintiffs' request for leave to amend their allegations with regard to

2   St. Joseph Health.

3   Defendants move to strike paragraph 48 of the complaint as being in violation of a

4   confidentiality provision from a settlement agreement and release in another case. Paragraph 48

5   alleges that defendants "have previously and repeatedly 'dumped' other patients in violation of

6   EMTALA including but not limited to [a certain person] . . . ." Compl. ¶ 48.   The complaint

7   alleges that plaintiffs' counsel Mr. Fladseth prosecuted a lawsuit on behalf of the individual

8   mentioned in paragraph 48, and the complaint includes some facts with regard to that other case.

9   Defendants assert, and plaintiffs do not deny, that the other matter was resolved by a confidential

10  settlement agreement prohibiting Mr. Fladseth from disclosing "any and all facts giving rise" to

11  that action.

12  Plaintiffs' opposition does not respond to defendants' request to strike paragraph 48, and

13  based upon the record before the Court, it appears that the inclusion of paragraph 48 is in violation

14  of the confidentiality agreement in the other matter. Accordingly, the Court GRANTS defendants'

15  request to strike paragraph 48.

16

17  **CONCLUSION**

18  For the foregoing reasons, the Court GRANTS IN PART defendant's motion and

19  GRANTS leave to amend the complaint. **The amended complaint must be filed no later than**

20  **October 24, 2016.**

21

22  **IT IS SO ORDERED**.

23

24  Dated: October 12, 2016                    _____

25                                              SUSAN ILLSTON
                                                United States District Judge

26

27

28

9