UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA GUTIERREZ, *et al.*, <br><br>　　Plaintiffs, <br><br>　　v. <br><br>SANTA ROSA MEMORIAL HOSPITAL, *et al.*, <br><br>　　Defendants. | Case No. 16-cv-02645-SI <br><br> **ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 32 |

Defendants' motion to dismiss and strike the first amended complaint is scheduled for a hearing on December 16, 2016. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendant's motion.

**BACKGROUND**

On May 17, 2016, plaintiffs Cynthia Gutierrez, Jose Huerta, S.M.H., R.H., and A.H. filed this lawsuit against Santa Rosa Memorial Hospital ("SRMH"), St. Joseph Health, and Does 1-50. Gutierrez and Huerta are married, and S.M.H., R.H. and A.H. are their minor children. Plaintiffs allege that Gutierrez was 33 years old when she presented to SRMH at approximately 3:00 a.m. on February 25, 2015. First Amd. Compl. ("FAC") ¶ 1. Gutierrez is diabetic and had end-stage renal disease, and because of her medical conditions Gutierrez was a frequent patient at SRMH's emergency room. *Id*. at ¶¶ 2, 5. The FAC alleges that "[o]n this particular occasion, various laboratory and diagnostic tests were ordered. Many of the test results were remarkable for the presence of life-threatening disease. Inexplicably, these 'red flags' were ignored." *Id*. at ¶¶ 6-7.

1    Gutierrez was discharged from the emergency room at approximately 6:35 a.m.  *Id*. at ¶ 8.
2    Gutierrez was sitting in the waiting room when she collapsed.  *Id*. ¶ 9.  The complaint alleges that
3    a "Code Blue" was called, and that Gutierrez was resuscitated and transferred to the ICU.  *Id*. at ¶¶
4    9-10.  Gutierrez has remained in a coma, and after several months at SMRH she was transferred to
5    Kentfield Rehabilitation Center.  *Id*. at ¶¶ 12, 14.

6          The original complaint alleged three causes of action: (1) a violation of the federal
7    Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; (2) a
8    violation of California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. &
9    Inst. Code § 15657; and (3) negligence.

10         In an order filed October 12, 2016, the Court granted in part and denied in part defendant's
11   motion to dismiss the complaint.  The Court held that the complaint did not allege facts supporting
12   a "failure to screen" theory of liability under EMTALA because plaintiff did not allege that the
13   hospital either refused to screen her or that the hospital provided her with differential screening.
14   The Court dismissed this claim with leave to amend, and instructed plaintiffs as follows: "If
15   plaintiffs amend this claim, plaintiffs are directed to allege how the screening provided to
16   Gutierrez was not comparable to similarly situated patients and/or how the screening provided was
17   so minimal that it cannot be said to have been appropriate."  Dkt. No. 25 at 5:19-21.  The Court
18   found that plaintiffs had sufficiently alleged a "failure to stabilize" claim under EMTALA.  The
19   Court noted that the complaint alleged that defendants performed various laboratory and
20   diagnostic tests, that "[m]any of the test results were remarkable for the presence of life-
21   threatening disease," that defendants ignored the test results showing life-threatening unstable
22   conditions, and that the hospital discharged Gutierrez without stabilizing her emergency medical
23   conditions.  The Court found that it was reasonable to infer from these allegations that the hospital
24   detected – and ignored – an emergency medical condition that required stabilization, and that at
25   this stage of the litigation these allegations were sufficient to state a claim.  *Id*. at 6:4-14.

26         The Court also dismissed with leave to amend plaintiffs' claim under California's Elder
27   Abuse and Dependent Adult Civil Protection Act. The Court held that plaintiffs had failed to
28   allege how Gutierrez was a "dependent adult" under either of the definitions of "dependent adult"

set forth in the statute. *Id*. at 7. The Court also found that plaintiffs had failed to allege facts to establish a caretaking or custodial relationship between defendants and Gutierrez. *Id*. at 8. The Court granted plaintiffs leave to amend this claim.

On October 24, 2016, plaintiffs filed the first amended complaint. The FAC alleges both failure to screen and failure to stabilize theories under EMTALA, a claim under California's Elder Abuse and Dependent Adult Civil Protection Act, and a claim for negligence. The FAC includes new allegations about the specific laboratory and diagnostic tests performed on Gutierrez, and alleges that the test results showed evidence of "profound congestive heart failure." FAC ¶ 32. The FAC alleges that "[d]espite this clear evidence of life-threatening disease in a known diabetic with grossly abnormal blood sugar and extreme evidence of heart failure absolutely no screening was done to determine the presence or absence of diabetic ketoacidosis. The laboratory tests necessary to screen for this apparent disease process were simply not done." *Id*. ¶ 33. The FAC also alleges that "[i]nstead of admitting Gutierrez and providing the necessary screening tests and care, defendants chose instead to simply overdose her on narcotic pain medications which would further suppress her respiratory system and discharge her from the hospital." *Id*. ¶ 34. The FAC alleges that "[d]efendants' pattern and practice was to deny and avoid care for indigent and uninsured and underinsured and including, but not limited to, Medi-Cal patients such as CYNTHIA and those with substance and/or mental health issues and/or apparent minority or questionable immigration status and/or with Hispanic surnames and/or appearances such as CYNTHIA GUTIERREZ." *Id*. ¶ 48.

Defendant has moved to dismiss the FAC, and also to strike references in the FAC regarding other individuals who have filed lawsuits against SMRH.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688–89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

I.  **EMTALA**

The FAC alleges that defendants "dumped and failed to screen or stabilize" Gutierrez in violation of EMTALA. Defendants move to dismiss plaintiffs' EMTALA claim on the ground that the FAC fails to set forth sufficient facts in support of either a "failure to screen" or a "failure to stabilize" theory of liability.

4

"[T]he Emergency Medical Treatment and Active Labor Act, commonly known as the 'Patient Anti–Dumping Act,' [was enacted] in response to a growing concern about 'the provision of adequate emergency room medical services to individuals who seek care, particularly as to the indigent and uninsured.'" *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995) (quoting H.R. Rep. No. 241, 99th Cong., 1st Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 726-27). "If an individual seeks emergency care from a hospital with an emergency room and if that hospital participates in the Medicare program, then 'the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." *Bryan v. Adventist Health System/West*, 289 F.3d 1162, 1165 (9th Cir. 2002) (quoting 42 U.S.C. § 1395dd(a)); *Eberhardt*, 62 F.3d at 1255-56. An "emergency medical condition" is one "manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (i) the placing of the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part . . . ." 42 U.S.C. § 1395dd(b)(1)(A). "If the hospital's medical staff determines that there is an emergency medical condition, then . . . the staff must 'stabilize' the patient before transferring or discharging the patient." *Bryan*, 289 F.3d at 1165; *Baker v. Adventist Health, Inc*., 260 F.3d 987, 992 (9th Cir. 2001). The term "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(A).

### A.  Failure to screen

Defendants argue that the FAC does not allege facts supporting a "failure to screen" theory of liability because plaintiff does not allege that the hospital either refused to screen her or that the hospital provided her with differential screening. In *Jackson v. East Bay Hospital*, 246 F.3d 1248 (9th Cir. 2001), the Ninth Circuit held that "a hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered

5

1  to other patients presenting similar symptoms, unless the examination is so cursory that it is not
2  'designed to identify acute and severe symptoms that alert the physician of the need for immediate
3  medical attention to prevent serious bodily injury.'" *Id.* at 1256 (quoting *Eberhardt*, 62 F.3d at
4  1257).

5        Although it is a close question, the Court finds that plaintiffs have sufficiently alleged facts
6  to proceed on a "failure to screen" theory of liability. As defendants note, the FAC does allege
7  that defendants performed some diagnostic and screening tests on Gutierrez. However the FAC
8  also alleges that the examination was inadequate and cursory, and that "[d]espite this clear
9  evidence of life-threatening disease in a known diabetic with grossly abnormal blood sugar and
10 extreme evidence of heart failure absolutely no screening was done to determine the presence or
11 absence of diabetic ketoacidosis. The laboratory tests necessary to screen for this apparent disease
12 process were simply not done." *Id.* ¶ 33. The FAC also now alleges that Gutierrez had Medi-Cal,
13 and that defendants' pattern and practice was to deny and avoid care for indigent and uninsured
14 and underinsured people like those with Medi-Cal. *Id.* ¶ 47.

15       The Court finds that these allegations are sufficient to state a claim that defendants
16 provided Gutierrez with a differential screening and one that was so cursory that it was not
17 designed to identify acute and severe symptoms. Defendants make compelling arguments that in
18 essence plaintiffs' failure to screen claim is really a claim that defendants negligently treated
19 Gutierrez by not ordering the proper laboratory and diagnostic tests. However, the Court finds that
20 as a pleading matter plaintiffs have stated a claim, and defendants may renew their arguments on
21 summary judgment with the benefit of a full factual record.

23     **B.**    **Failure to stabilize**

24       Defendants contend that plaintiffs failed to plead sufficient facts to support a "failure to
25 stabilize" theory of liability because there are no allegations that defendants diagnosed an
26 emergency medical condition before Ms. Gutierrez's discharge. This is the same argument that
27 defendants asserted in the prior motion to dismiss, and for the reasons set forth in the prior order,
28 the Court finds that plaintiffs have stated a claim for failure to stabilize liability under EMTALA.

## II.   California's Elder Abuse and Dependent Adult Civil Protection Act

Defendants move to dismiss plaintiffs' claim under California's Elder Abuse and Dependent Adult Civil Protection Act.  Defendants contend that the FAC does not allege facts showing how Gutierrez is a "dependent adult" under the statute, and that the FAC does not allege facts showing that the defendant health care providers had a caretaking or custodial relationship with Gutierrez.

The Elder Abuse and Dependent Adult Civil Protection Act provides heightened remedies to elders or dependent adults who can prove "by clear and convincing evidence that a defendant is liable for physical abuse as defined in [Cal. Welf. & Inst. Code] Section 15610.63, or neglect as defined in Section 15610.57," and who can demonstrate that the defendant acted with "recklessness, oppression, fraud, or malice in the commission of [this] abuse."  Cal. Welf. & Inst. Code § 15657.  Section 15610.57 defines "neglect" as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." Cal. Welf. & Inst. Code § 15610.57(a)(1).

### A.   "Dependent adult"

The Act sets forth two ways in which a person between the ages of 18 and 64 may be deemed a dependent adult.  First, the statute provides that "[d]ependent adult means any person between the ages of 18 and 64 years who resides in this state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities, or whose physical or mental abilities have diminished because of age."  Cal. Welf. & Inst. Code § 15610.23(a).  Second, "[d]ependent adult includes any person between the ages of 18 and 64 years who is admitted as an inpatient to a 24-hour health facility."  *Id*. § 15610.23(b).

Defendants argue that there are no allegations showing that Gutierrez was a "dependent adult" within the definition of the statute.  The Court agrees.  The FAC alleges that Gutierrez was a 33 year-old woman who was employed at the time of her visit to SRMH.  Although the FAC alleges that Gutierrez suffered from serious ailments such as diabetes and end stage renal disease,

7

1    plaintiffs do not allege that these conditions restricted her abilities to carry out normal activities or
2    to protect her rights. Further, plaintiffs cannot claim that Gutierrez was an inpatient at the time of
3    the alleged neglect because plaintiffs specifically allege that defendants were neglectful because
4    they did not admit Gutierrez.

5    Plaintiffs' opposition asserts that Gutierrez was "totally dependent" upon defendants for all
6    of her life-sustaining care. Dkt. No. 33 at 4:5-6. However, plaintiffs' expansive definition of
7    "dependent adult" does not have support within the statute, and as defendants note, under
8    plaintiffs' broad interpretation anyone between the ages of 18 and 64 who was ill and taken to the
9    emergency room by ambulance would be considered a "dependent" under the statute. Plaintiffs
10   also assert that they need Gutierrez's medical records in order to address the issues of whether
11   Gutierrez was a dependent. The Court finds this assertion lacks merit, as a review of the medical
12   records will here not shed light on whether Gutierrez was a dependent adult.

### B.   Caretaking or custodial relationship

Defendants also contend that plaintiffs have failed to state a claim because the FAC does not allege facts to establish a caretaking or custodial relationship between defendants and Gutierrez. The Court agrees. The FAC alleges that Gutierrez "was under Defendants' care and custody and in need of acute and ongoing emergency and custodial and long-term medical care." FAC ¶ 59. However, the fact that Gutierrez may have required such care when she presented at the emergency room is not, on its own, sufficient to allege a caretaking or custodial relationship between defendants and Gutierrez. *See generally Winn v. Pioneer Medical Group, Inc.*, 63 Cal.4th 148, 155 (2016) (holding "a claim of neglect under the Elder Abuse Act requires a caretaking or custodial relationship — where a person has assumed significant responsibility for attending to one or more of those basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance."). The *Winn* court noted that the Legislature did not intend the "Act to apply whenever a doctor treats an elderly patient [or dependent adult]. Reading the act in such a manner would radically transform medical malpractice liability." *Id.* at 165. Here, plaintiffs allege that defendants failed to provide

1 necessary medical care at a hospital emergency room, not at a residential care facility or skilled
2 nursing facility. Plaintiffs have not cited any authority for the proposition that a caretaking or
3 custodial relationship is present simply because a very sick individual goes to the emergency room
4 to seek care.

5     The Court has already provided plaintiffs with an opportunity to amend this claim, and the
6 Court finds that future leave to amend would be futile. Accordingly, the Court GRANTS
7 defendants' motion to dismiss this claim without leave to amend.

### III. Other issues

10     Defendants' request to dismiss plaintiffs' claim for punitive damages is DENIED in light
11 of the fact that the Court has found that plaintiffs may proceed on their EMTALA claim.

12     Defendants move to strike paragraphs 49 and 53 and exhibits 3 and 4 to the FAC on the
13 ground that they violate two confidentiality provisions from settlement agreements in two other
14 cases. Paragraph 49 and 53 contain allegations regarding an EMTALA lawsuit filed by plaintiffs'
15 counsel, Mr. Fladseth.  Exhibit 3 is a copy of the complaint in that lawsuit, and exhibit 4 is a copy
16 of a different EMTALA lawsuit filed by Mr. Fladseth.  Defendants assert that both of the lawsuits
17 were resolved by confidential settlement agreements prohibiting Mr. Fladseth from disclosing
18 "any and all facts giving rise" to those actions.  Because of the confidentiality provisions,
19 defendants have not provided the settlement agreements to the Court, but they have cited the
20 relevant confidentiality provisions.

21     The Court previously struck the allegations contained in paragraph 49 as being in violation
22 of the confidentiality agreement cited by defendants. In response to the current motion to strike,
23 plaintiffs' counsel asserts that he has not alleged the terms of any settlement. However, as
24 defendants note, the settlement agreements prohibit the disclosure of "the details and any and all
25 facts giving rise to this action . . . as well as the names and backgrounds of the parties to this
26 action." Although plaintiffs' counsel asserts that confidentiality agreements run counter to public
27 policy concerns, counsel does not deny that he entered into such agreements on behalf of his
28 clients in the cases cited in the FAC and its exhibits, nor does he assert that those agreements are

unenforceable.

Plaintiffs also cite California Code of Civil Procedure § 2017.310(a) for the proposition that confidential settlement agreements are disfavored in cases involving elder or dependent abuse. However, in one of the lawsuits, Judge Hamilton dismissed the claim under the Elder Abuse and Dependent Adult Civil Protection Act for failure to allege that the plaintiff was a dependent adult. *See* Dkt. No. 55 in C 4:12-cv-06364 PJH. The complaint attached as Exhibit 4 similarly does not allege facts showing that the plaintiff was a "dependent adult." Based upon the record before the Court, it appears that the inclusion of paragraphs 49 and 53 and exhibits 3 and 4 is in violation of the confidentiality agreements, and accordingly the Court GRANTS defendants' request to strike paragraphs 49 and 53 and exhibits 3 and 4.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART defendant's motion without leave to amend.

**IT IS SO ORDERED**.

Dated: December 13, 2016

SUSAN ILLSTON
United States District Judge