1  **Douglas C. Fladseth**  (Bar No. 083420)
   **LAW OFFICE OF DOUGLAS C. FLADSETH**
2  **1160 North Dutton Avenue, Suite 180**
   **Santa Rosa, California 95401**
3  **Telephone: (707) 545-2600**
   **Fax: (707) 545-0552**
4  **fladseth@aol.com**

5
   **Attorneys for Plaintiffs**
6

7

8                      UNITED STATE DISTRICT COURT

9                      Northern District of California

10

11  CYNTHIA GUTIERREZ, JOSE HUERTA,          Case No.  16-cv-02645-SI
    SMH, RH and AH,
12                                            **SECOND AMENDED COMPLAINT**
                    Plaintiffs,
13
                  vs.
14
    SANTA ROSA MEMORIAL HOSPITAL,
15  ST. JOSEPH HEALTH, TEAMHEALTH,
    CHASE DENNIS EMERGENCY MEDICAL
16  GROUP, INC. ELLIOT BRANDWENE, M.D.,
    STEWART LAUTERBACH, M.D. and
17  DOES 1-50, inclusive,

18                  Defendants.
                                                          /
19

20                      **STATEMENT OF THE CASE**

21       1.       CYNTHIA GUTIERREZ was 33 years old when she presented to Defendant

22  SANTA ROSA MEMORIAL HOSPITAL at approximately 3:00 a.m. on February 25, 2015.

23       2.       CYNTHIA GUTIERREZ was diabetic.  She had end stage renal disease.  She

24  weighed 134 pounds and was 5' 2" tall.

25       3.       She worked at a Panera restaurant in Rohnert Park, California.

26       4.       Her husband is JOSE HUERTA.  They have three minor children, ages 15, 11

27  and 8.

28  ///

                                      1

5.  Because of her medical conditions, CYNTHIA was frequently a patient at SANTA ROSA MEMORIAL HOSPITAL'S emergency room.

6.  CYNTHIA had a previously documented severe adverse reaction/allergy to Dilaudid,

7.  On this particular occasion, various laboratory and diagnostic tests were ordered. Many of the test results were remarkable for the presence of life threatening disease.

8.  Inexplicably, these "red flags" were ignored.

9.  CYNTHIA was discharged from the emergency room at approximately 6:35 a.m.

10.  CYNTHIA was sitting in the waiting room when she collapsed.

11.  CYNTHIA was administered Dilaudid shortly before her collapse.

12.  A Code Blue was called and she was resuscitated.

13.  She was transferred to the ICU.

14.  She has remained in a coma.

15.  No explanation has been provided to the family as to how this occurred.

16.  CYNTHIA  remained at SANTA ROSA MEMORIAL HOSPITAL for many months and is currently at Kentfield Rehabilitation Center.

## IDENTIFICATION OF PARTIES

**A.**   **Plaintiffs.**

17.  CYNTHIA GUTIERREZ, 200 Craubrook Way #203, Santa Rosa, CA 95407.

18.  JOSE HUERTA, 200 Craubrook Way #203, Santa Rosa, CA 95407.

19.  SMH, 200 Craubrook Way #203, Santa Rosa, CA 95407.

20.  RH, 200 Craubrook Way #203, Santa Rosa, CA 95407.

21.  AH, 200 Craubrook Way #203, Santa Rosa, CA 95407.

**B.**   **Defendants.**

22.  SANTA ROSA MEMORIAL HOSPITAL (SRMH), 1165 Montgomery Drive, Santa Rosa, California 95405.

23.  ST. JOSEPH HEALTH, 3345 Michelson Drive, Ste 100, Irvine, CA 92612.

24.  TEAMHEALTH, 265 Brookview Centre Way, Ste 400, Knoxville, TN 37919

25. CHASE DENNIS EMERGENCY MEDICAL GROUP, INC., 1165 Montgomery Drive, Santa Rosa, California 95405.

26. ELLIOT BRANDWENE, M.D., 3105 Burkhart Ln, Sebastopol, CA 95472

27. STEWART LAUTERBACH, M.D., 1165 Montgomery Drive, Santa Rosa, CA 95405

## JURISDICTION AND VENUE

28. This case belongs in federal court under federal question jurisdiction because it is about federal law(s) or right(s) of EMTALA.

29. Venue is appropriate in this Court because the majority of the Defendants are based in California and at least one of the Defendants lives in this district and because a substantial part of the events being sued about happened in this district.

30. Plaintiffs hereby demand a jury trial in this action.

## INTRADISTRICT ASSIGNMENT

31. This lawsuit should be assigned to San Francisco/Oakland Division of this Court because this is the district where the event occurred.

## STATEMENT OF FACTS AND CLAIMS

32. CYNTHIA GUTIERREZ was 33 years old when she presented to Defendant SRMH at approximately 3:00 a.m. on February 25, 2015. She presented with persistent shortness of breath since 7:00pm the evening before.

33. CYNTHIA GUTIERREZ was diabetic. She had end stage renal disease. She weighed 134 pounds and was 5' 2" tall.

34. CYNTHIA GUTIERREZ had, in defendant hospital's records, previously documented severe adverse reaction(s) to Dilaudid.

35. CYNTHIA GUTIERREZ previously worked at a Panera restaurant in Rohnert Park, California.

36. CYNTHIA GUTIERREZ's husband is JOSE HUERTA. She has three minor children.

///

1    37.    Because of her medical conditions, CYNTHIA was frequently a patient at

2    SRMH'S emergency room.

3    38.    On this particular occasion, various laboratory and diagnostic tests were ordered.

4    Many of the test results were remarkable for the presence of life threatening disease.

5    Supplemental oxygen was started. Her blood pressure was recorded as 177/97 at 3:51 a.m.  At

6    5:27 a.m. her blood glucose was recorded as 418 which is extremely out of normal range. Her

7    Brain Natriuretic Peptide (BNP) was > 5000 with the normal range being 0-100. This evidences

8    profound congestive heart failure. A chest x-ray demonstrated prominence of the pulmonary

9    vascularity as well as bilateral interstitial infiltrates evidencing fluid overload with congestive

10   heart failure.

11   39.    Despite this clear evidence of life threatening disease in a known diabetic with

12   grossly abnormal blood sugar and extreme evidence of heart failure absolutely no screening was

13   done to determine the presence or absence of diabetic ketoacidosis. The laboratory tests

14   necessary to screen for this apparent disease process were simply not done. These necessary

15   screening tests none of which were done include: 1. arterial blood gas, 2. urinalysis, 3. serum

16   ketones and 4. anion gap calculations. These are all routine and standard screening exams

17   especially for patients who present with compelling evidence of acute diabetic ketoacidosis.

18   40.    Instead of admitting CYNTHIA and providing the necessary screening tests and

19   care, defendants chose instead to simply overdose her on narcotic pain medications which would

20   further suppress her respiratory system and discharge her from the hospital. At 4:21 a.m. she was

21   given 1 mg IV of Dilaudid.  At 6:22 a.m. she was given an additional 1mg IV of Dilaudid. The

22   Dilaudid was given ostensibly for right hand pain from peripheral neuropathy. It is not a usual or

23   appropriate narcotic for that purpose. Dilaudid is synthetic heroin, eight times stronger than

24   morphine. It is a respiratory depressant being given to a patient who presented with respiratory

25   difficulty. It is contraindicated for someone like CYNTHIA who presents with respiratory

26   distress such as persistent shortness of breath and particularly for someone with compelling

27   evidence of acute congestive heart failure and fluid overload.

28   ///

41.     Simply masking the problem and discharging the patient abdicates the ER's responsibility to provide appropriate screening tests as part of basic and fundamental emergency care.

42.     CYNTHIA was discharged from the emergency room at 7:00 a.m. The ER physician and staff failed to admit MS. GUITIERREZ who continued to need ongoing screening, monitoring, care, treatment and custody for her acute condition.

43.     CYNTHIA was sitting in the ER waiting room when she collapsed.

44.     CYNTHIA was administered Dilaudid shortly before her collapse.

45.     At 7:26 a.m. a Code Blue was called.  This was one hour and four minutes after the staff administered IV Dilaudid to MS. GUTIERREZ.  The record indicates she had no respirations at this time.  Resuscitation was initiated.

46.     She was transferred to the ICU.

47.     She has remained in a coma.

48.     No explanation has been provided to the family as to how this occurred.

49.     Defendants performed a cursory and inadequate screening.

50.     Defendants failed to stabilize CYNTHIA GUTIERREZ.

51.     Defendants ignored even their own test results showing life-threatening, unstable conditions.  They nonetheless intentionally and recklessly chose to simply discharge CYNTHIA GUTIERREZ.

52.     As such, Defendants failed to comply with EMTALA requirements to reasonably screen and stabilize.

53.     Defendants intentionally and recklessly and negligently refused and failed to follow federal law EMTALA and state law and their own policies and procedures all of which mandated medical screening and stabilization of CYNTHIA'S emergency medical conditions when she presented to their ER.

54.     Defendants' pattern and practice was to deny and avoid care for indigent and uninsured and under insured and including, but not limited to, Medi-Cal patients such as CYNTHIA and those with substance and/or mental health issues and/or apparent minority or

Second Amended Complaint                                                    16-cv-02645-SI

1    questionable immigration status and/or with Hispanic surnames and/or appearances such as

2    CYNTHIA GUTIERREZ.

3          55.    Despite claiming to be a charitable and caring organization by history Defendants

4    have instead placed corporate profits and revenues ahead of patient care and safety due to

5    financial pressures they have received from competing facilities including but not limited to

6    Sutter Heath and Kaiser and for other unknown reasons.

7          56.    Two prior cases, violating EMTALA by these same defendants, have also been

8    prosecuted by the undersigned. It is requested that the court take judicial notice of the federal and

9    state investigations copies attached hereto as Exhibit 1 & 2  citing these same defendants for

10   EMTALA and other violations in each of the above mentioned cases.

11         57.    Defendants have also effectively discharged other patients by making them wait

12   inordinate times and discouraging them from coming to the ER and by pretending to perform the

13   requisite screening and stabilization procedures but instead minimizing all contacts and care and

14   only seeking to try to avoid liability for violating EMTALA and other laws and the hospital's

15   own policies and procedures.

16         58.    SRMH has been repeatedly been cited for intentional understaffing by the CDPH

17   [California Department of Public Health.]

18         59.    It has just been discovered, at the deposition of CPR responding Emergency

19   room doctor, Dr. Lauterbach, taken by the hospital's attorney, beginning on March 22, 2017, that

20   defendants have unreasonably failed to provide and include all the critical records pertaining to

21   this event. Defendants for the first time produced a next day "addendum" authored by the CPR

22   responding Emergency room doctor, Dr. Lauterbach, claiming that CYNTHIA GUITIERREZ

23   was found to have food blocking her airway. No such blockage was mentioned in any of the

24   previously provided records (>30,000 produced), including but not limited to the original note by

25   Dr. Lauterbach, nor by the responding Respiratory Therapist, nor by the treating ICU doctor, nor

26   anyone else, that day, nor at any other time (other than a few vague references by Defendant only

27   after this motion was filed and without apparent basis since no "addendum" was in the originally

28   produced records).

60.     It has also just been discovered, at the deposition of CPR responding Emergency room doctor, Dr. Lauterbach, taken by the hospital's attorney, beginning on March 22, 2017, by and through the hospital attorney's questioning, that the previously documented history of major adverse reactions to Dilaudid was ignored and undocumented, thereby concealing a significantly reckless contribution to CYNTHIA GUTIERREZ respiratory arrest.

61.     CYNTHIA GUTIERREZ hereby further requests leave of court for the time necessary to conduct her own discovery from defendants including but not limited to discovery of the records of other patients similarly presenting to defendant's ER and also including discovery of defendant's written policies and procedures for similarly presenting patients and also in order to obtain testimony under oath from the treating doctors and nurses at defendants ER regarding the practices and policies and procedures in place at this ER. This discovery will allow CYNTHIA to further elaborate her factual basis for disparate screening.

62.     CYNTHIA GUTIERREZ hereby further requests leave of court for the time necessary to conduct her own discovery from defendants including but not limited to defendants' EMR (Electronic Medical Records) in use at the time in question and also including defendants' EMR policies and procedures and also including

**FIRST CAUSE OF ACTION**

**(EMTALA 42 U.S.C. 1395dd)**

63.     Plaintiffs reincorporate paragraphs 1 through 62, above.

64.     Defendants "dumped" and failed to screen or stabilize CYNTHIA GUTIERREZ in violation of this law.

**SECOND CAUSE OF ACTION**

**(Negligence)**

65.     Plaintiffs reincorporate paragraphs 1 through 64 above.

66.     General negligence including unreasonable care and lack of reasonable and necessary care in violation of the above stated Federal and California statutory law and as well as in violation of Defendants' own policies and procedures as well as breach of Defendants' general and fiduciary duties to provide standard and reasonable care.  Plaintiffs and each of them also

Second Amended Complaint                                                                16-cv-02645-SI

1   claim damages as direct victims and as bystanders due to negligent infliction of emotional

2   distress.

3                          **DEMAND FOR RELIEF**

4          Wherefore, Plaintiffs pray for relief as follows:

5          1.      For damages, economic and non-economic, to each of Plaintiffs according to

6   proof;

7          2.      For enhanced remedies EMTALA, including attorneys fees;

8          3.      For exemplary/punitive damages including but not limited to as provided for by

9   EMTALA;

10         4.      For EMTALA related remedies including, but not limited to, attorney fees and

11  costs and compensation to CYNTHIA GUTIERREZ and JOSE HUERTA and their family

12  members and loved ones; and

13         5.      Prejudgement interest in the amount of 10% per year or at the maximum level

14  recoverable by law.

15

16  DATED:  July 3, 2017                  LAW OFFICES OF DOUGLAS C. FLADSETH

17
                                          /s/
18                                        _____
19                                        DOUGLAS C. FLADSETH
                                          Attorney for Plaintiffs
20

21                         **DEMAND FOR JURY TRIAL**

22         Plaintiffs hereby demand a jury trial in this action.

23  Dated:  July 3, 2017                  LAW OFFICES OF DOUGLAS C. FLADSETH

24                                        /s/
                                          _____
25                                        DOUGLAS C. FLADSETH
                                          Attorney for Plaintiffs
26

27

28

Second Amended Complaint                                              16-cv-02645-SI