BARRY VOGEL, STATE BAR NO. 108640
*bvogel@ljdfa.com*
BRETT SCHOEL, STATE BAR NO. 224212
*BSchoel@ljdfa.com*
**LA FOLLETTE, JOHNSON,**
**DE HAAS, FESLER & AMES**
655 University Avenue, Suite 119
Sacramento, California 95825
Phone: (916) 563-3100
Facsimile:     (916) 565-3704

Attorneys for Defendants SANTA ROSA MEMORIAL HOSPITAL and ST. JOSEPH HEALTH

UNITED STATES DISTRICT COURT OF CALIFORNIA

NORTHERN DISTRICT

| | |
|---|---|
| CYNTHIA GUTIERREZ, JOSE HUERTA, SMH, RH and AH,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA ROSA MEMORIAL HOSPITAL; ST. JOSEPH HEALTH; TEAMHEALTH, CHASE DENNIS EMERGENCY MEDICAL GROUP, INC.; ELLIOT BRANDWENE, M.D.; STEWART LAUTERBACH, M.D.; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 3:16-CV-02645-SI<br><br>**DECLARATION OF BRETT SCHOEL IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL BRIEF RE: ELECTRONIC HEALTH RECORDS DISCOVERY DISPUTE**<br><br>Judge:             Honorable Susan Illston<br>MSC Date:       Not set<br>Pre-Trial Conf: November 6, 2018<br>Trial Date:        November 19, 2018 |

I, Brett Schoel, declare as follows:

1.     I am an attorney duly licensed to practice law in all courts of the State of California and admitted to appear before this Court. I am a shareholder at the law firm of La Follette, Johnson, DeHaas, Fesler & Ames, attorneys of record for Santa Rosa Memorial Hospital and St. Joseph Health (collectively, "Defendants").

2.     I make this declaration in support of Defendants' Supplemental Brief re: Electronic Health Records Discovery Dispute. I have personal knowledge of the facts set forth below, or for those matters of which I do not have personal knowledge, I state them upon information and belief, and if called as a witness I could and would competently testify thereto.

1

DECLARATION OF BRETT SCHOEL IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL
BRIEF RE: ELECTRONIC HEALTH RECORDS DISCOVERY DISPUTE                3:16-CV-02645-SI

3. I have met and conferred with Douglas Fladseth, counsel for Plaintiffs in the above-entitled action, and we have been unable to reach an agreement as to the discovery dispute presently before this Court.

4. I have previously explained the issues surrounding Dr. Lauterbach's addendum to Mr. Fladseth. On file with this Court as part of the Opposition to the Motion to Amend is my Declaration and the Declaration of Shari Titus laying out the facts related to this issue.

5. On or about September 6, 2016, my office received a Request for Production of Documents from Plaintiffs, which included a single request for Cynthia Gutierrez' Medical Records. Three days later, on or about September 9, 2016, my office responded to the request and provided Plaintiffs with a copy of the medical records. At the time, it was my understanding the records we had, and which we produced to Plaintiffs, were a full and complete copy of Ms. Gutierrez' medical records from Santa Rosa Memorial Hospital.

6. My office and I began our review and workup of the case, which necessarily included extensive and thorough review of the medical records (more than 30,000 pages), which were identical to the records produced to Plaintiffs. During review of the records, I noted two hospitalist progress notes wherein the physician referred to a comment by Dr. Stewart Lauterbach about food found in the endotracheal tube during the resuscitation at issue; however, Dr. Lauterbach's Emergency Department Report dated February 25, 2015, in the ITS format did not include said comment.

7. During review of the records I also noted references to "pneumonitis due to inhalation of food and vomit," "aspiration pneumonia," "incis w rem of foreign body," "food/vomit pneumonitis," "gastroparesis," "resp obstr-food inhal," "aspiration into airway … due to gastroparesis and subsequent cardio-respiratory arrest," and "severe gastroparesis." As the treating physicians were neither hospital employees nor defendants in this action, Ms. Gutierrez' right to privacy and the Health Insurance Portability and Accountability Act of 1996 necessitated that I notice the depositions of Dr. Lauterbach and Dr. Elliot Brandwene, so I could inquire generally into the care they provided to Ms. Gutierrez and specifically into the references in the record to the comment by Dr. Lauterbach. Both physicians were represented by their own counsel at the deposition.

8. At the March 22, 2017, deposition of Dr. Lauterbach, I informed Plaintiffs' counsel I

1  was unable to locate any addendum or note by Dr. Lauterbach in the medical records and asked if he
2  had a copy of it in his records. Dr. Lauterbach brought a copy of his Emergency Department Report
3  dated February 25, 2015, to the deposition and it included the addendum in question.

4      9.   After conclusion of the deposition, I immediately began investigating why the medical
5  records provided to us by the hospital did not appear to be complete. Based upon my investigations I
6  have learned, and it is my understanding employees of Defendants will testify to the fact, the failure
7  to print the addendum in the ITS report was due to a printing software glitch that Defendants were
8  unaware of until Dr. Lauterbach's deposition. The ITS format was created to generate a specific report
9  that pulled information only from certain modules. It was a quicker way of printing a record for a
10 patient with a large number of visits. The pDoc format is the standard format for printing and pulls
11 information from all modules and takes much longer to print. This glitch only affected the printed
12 records, not the electronic records.

13     10.  I informed Mr. Fladseth of the results of my investigation. I explained the records
14 provided by Defendants to my office and subsequently to Plaintiffs were identical and the omission
15 was unintentional secondary to a glitch in the electronic software. I have explained the computer glitch
16 and the difference between the nonstandard ITS format and standard pDoc format to Mr. Fladseth. His
17 office has been provided with a complete copy of the records in pDoc format.

18     11.  The Audi trail reflects what information was entered into and changes made to a report.
19 A true and correct copy of the Audit Trail of Dr. Lauterbach's Note, which was previously provided
20 to Plaintiffs, is attached hereto as Exhibit B.

21     12.  A true and correct copy of Excerpts from Shari Titus' May 15, 2018, Deposition is
22 attached hereto as Exhibit C.

23     13.  During the course of this litigation it was brought to my attention both through my own
24 investigations and by Mr. Fladseth, that the Emergency Department Reports and the ED Summary
25 Reports have different information for the same visit date.

26     14.  Based upon my investigations, conversations with Defendants' employees, and
27 depositions taken by Mr. Fladseth, I am informed and understand the Emergency Department Reports
28 are created by the physician, with the assistance of a scribe, during his or her care and treatment of a

patient who has presented into the emergency department. After he or she completes his or her care of the patient, a summary and medical decision-making section is dictated, which, based upon the custom and practice of the physician, can take place one day to two weeks following the encounter. When this record is finalized by the physician's signature, it reflects the information in the patient's medical records at that time.

15. Based upon my investigations, conversations with Defendants' employees, and depositions taken by Mr. Fladseth, I am informed and understand the ED Summary Reports are summarizations of a patient's emergency department visit. These reports are finalized 30-days after the last activity on that day's visit. This permits time for testing, such as blood cultures, to be completed. The date the report is final is noted in the upper left-hand side of the report. As the report pulls its information from the patient's medical records on the day it is finalized, it reflects the information in the patient's medical records 30-days after the patient presented to the emergency department.

16. Based upon the above difference in timing between when the Emergency Department Report and the ED Summary Report are final, if a patient's information is modified within that 30-day period, the records will contain different information.

17. This has been explained to Mr. Fladseth on several occasions. He also asked questions about the above at depositions he has taken of Defendants' employees. The Patient Allergies and Adverse Reactions Audit Trail has been provided to Mr. Fladseth and explained in conjunction with the above differences in timing between the Emergency Department Report and the ED Summary Report. A true and correct copy of the Patient Allergies and Adverse Reactions Audit Trail is attached hereto as Exhibit D.

18. A true and correct copy of Exemplar Reports composed of the Emergency Department Reports and ED Summary Reports from January 20, 2015, and February 9, 2015, are attached hereto as Exhibit E.

19. The Access Log for the entire medical record has similarly been provided to Mr. Fladseth. It was provided as an Excel file. It took me at most a couple minutes to use sort function to determine exactly when Nurse Drossman accessed the allergy section of Ms. Gutierrez' chart. A true

and correct copy of this excerpt is attached hereto as Exhibit F.

20. I have explained all of the above to Mr. Fladseth on several occasions.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct to the best of my own personal knowledge. Executed in Sacramento, California on the date below.

Date: July 20, 2018                                      _____/s/_____
                                                          Brett Schoel