BRETT SCHOEL, STATE BAR NO. 224212
*BSchoel@ljdfa.com*
DIANA KAEMPFER, STATE BAR NO. 299315
*DKaempfer@ljdfa.com*
**LA FOLLETTE, JOHNSON,
DE HAAS, FESLER & AMES**
655 University Avenue, Suite 119
Sacramento, California 95825
Phone: (916) 563-3100
Facsimile:      (916) 565-3704

Attorneys for Defendants SANTA ROSA MEMORIAL HOSPITAL and ST. JOSEPH HEALTH

UNITED STATES DISTRICT COURT OF CALIFORNIA

NORTHERN DISTRICT

| | |
|---|---|
| CYNTHIA GUTIERREZ, JOSE HUERTA, SMH, RH and AH,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA ROSA MEMORIAL HOSPITAL, ST. JOSEPH HEALTH, TEAMHEALTH, CHASE DENNIS EMERGENCY MEDICAL GROUP, INC. ELLIOT BRANDWENE, M.D., STEWART LAUTERBACH, M.D. and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 3:16-CV-02645-SI<br><br>**TRIAL BRIEF RE: APPLICABILITY OF MICRA TO DAMAGES AND RECOVERABILITY OF PUNITIVE DAMAGES**<br><br>Honorable Susan Illston<br>MSC Date:     Not set<br>Pre-Trial Conf:  November 6, 2018<br>Trial Date:     November 19, 2018 |

## I.    INTRODUCTION

The award of damages in this matter involves two overarching questions: (1) does the damages cap in the Medical Injury Compensation Reform Act ("MICRA") apply to the EMTALA cause of action; and (2) are punitive damages are recoverable? The answer to both questions is a qualified yes.

If the jury finds in Plaintiffs' favor and decides the Hospital Defendants failed to stabilize Ms. Gutierrez prior to discharging her, MICRA's $250,000, limitation on non-economic general damages will apply. If, on the other hand, the jury finds in Plaintiffs' favor and decides the Hospital Defendants either refused to screen Ms. Gutierrez or provided her with a disparate screening when compared with

other similarly situated patients, then MICRA's $250,000 limitation on non-economic general damages does not apply. Importantly, however, for any of the causes of action brought by Plaintiffs, for the jury to award punitive damages, it must be demonstrated by clear and convincing evidence the Hospital Defendants acted with malice, oppression, or fraud in their care and treatment of Ms. Gutierrez.

## II.     LEGAL ARGUMENT

### A. MICRA Is Applicable to a Claim of Failure to Stabilize but Inapplicable to a Claim of Disparate Screening

MICRA limits apply to actions based upon a failure to stabilize, however, it is inapplicable to a claim of disparate screening. The language of EMTALA incorporates state law damage caps:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate. 42 U.S.C.S. § 1395dd.

In interpreting what Congress meant by the above section, "the Court is to follow the interpretation of MICRA as made by California courts, and in particular the California Supreme Court." *Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, 583 F.Supp.2d 1179, 1185 (E.D. Cal 2008).

i. Damages recoverable for a failure to stabilize are covered by MICRA

A hospital does not violate EMTALA if the medical staff treating the patient failed to detect or misdiagnosed an emergency medical condition. *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995); *see also Marshall v. E. Carroll Parish Hosp. Serv.*, 134 F.3d 319, 322-323 (5th Cir. 1998) ("a treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim.")

In *Jackson*, the Ninth Circuit reiterated a "hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition." *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1256-1257 (9th Cir. 2001) (*quoting Eberhardt* 62 F.3d at 1259). It went on to note, what it called the "actual detection rule" was in line with rulings from five other Circuits, which held actual knowledge is required prior to triggering the stabilization requirement of EMTALA. *Jackson*, 246

F.3d at 1257; (*citing Summer v. Baptist Med. Ctr. Arkadelphias*, 91 F.3d 1132, 1140 (8th Cir. 1996)). Both *Summers* and *Eberhardt* note the plain language of the statue sets out the fact it is not until the hospital detects the emergency condition that liability arises. *Eberhardt*, 62 F.3d at 1259; *Summer*, 91 F.3d at 1140. Thus, courts throughout this country, including this Circuit, have held <u>the duty to stabilize does not arise until after an emergency medical condition has been diagnosed</u>.

The California Supreme Court has directly addressed the applicability of MICRA to causes of action brought under EMTALA's failure to stabilize prong. "A claim under EMTALA for failure to stabilize is thus necessarily 'based on professional negligence' within the meaning of MICRA" as it involves an omission by a health care provider in his rendering of services to a patient. *Barris v. County of Los Angeles*, 20 Cal.4th 101, 110 (1999). A claim for failure to stabilize brought in a state court would be subject to MICRA as an action for injury against a health care provider based upon professional negligence; therefore, MICRA's cap applies to EMTALA actions as well. *See Barris*, 20 Cal.4th at 113. This decision was cited approvingly by the California Eastern District Court, noting the California Supreme Court's decision adopted the "analytical framework of the federal Fourth Circuit for determining whether the MICRA cap applies to a particular EMTALA claim." *Romar*, 583 F.Supp.2d at 1184.

Plaintiffs' claim the Hospital Defendants failed to stabilize Ms. Gutierrez. The failure to stabilize is a claim grounded in the professional negligence of the medical providers and pursuant to the language of EMTALA, the damages available are governed by the laws of the State in which the hospital is located. Therefore, if Plaintiffs demonstrate the Hospital Defendants failed to stabilize Ms. Gutierrez, the damages awarded would be subject to the damage cap set forth in MICRA. Specifically, Ms. Gutierrez and Jose. Huerta's general damages would be limited to $250,000 each.

      ii. <u>Damages recoverable for a disparate screening are not covered by MICRA</u>

MICRA's cap on non-economic general damages does not apply to a claim of a disparate screening. A claim for disparate screening requires Plaintiffs to produce evidence "sufficient to support a finding that she received a materially different screening than that provided to others in her condition. <u>*It is not enough to proffer expert testimony as to what treatment should have been provided to a patient in the plaintiff's position*</u>." *Romar*, 583 F. Supp. 2d at 1185 (emphasis added) (*quoting Reynolds v.*

*Mainegeneral Health,* 218 F.3d 78, 84 (1st Cir. 2000)). Even though a medical screening is provided by a hospital, "*a disparate screening claim is based upon disparate treatment*." *Romar*, 583 F. Supp. 2d at 1189 (emphasis added). EMTALA does not require hospitals to provide identical screenings to patients presenting with different symptoms. *Baker v. Adventist Health, Inc.,* 260 F.3d 987, 995 (9th Cir. 2001). Nor does EMTALA address whether the hospital employed negligent screening processes or provided a faulty screening. It addresses (1) **the refusal to screen** or (2) the **providing of disparate screens**. *See Marshall,* 134 F.3d at 322 (emphasis added). As the Court in *Jackson* noted, "[i]t is the plaintiff's burden to show that the Hospital treated [the patient] differently from other patients." *Jackson*, 246 F.3d at 1255 (*quoting Marshall,* 134 F.3d at 324). A viable failure to screen claim must be supported by factual allegations sufficient to support a finding the patient received a materially different screening from other patients with similar symptoms. *Reynolds*, 218 F.3d at 84.

In regard to damages, the question of disparate screening was not before the California Supreme Court in *Barris*. However, the *Romar* court directly addressed the issue of whether the damages recoverable secondary to a claim of disparate screening were limited by the damages cap in MICRA. EMTALA screenings are not negligence claims and "the provision of a screening is not governed by the standards of knowledge, care, and skill of members of the medical profession; a disparate screening claim is based on disparate treatment." *Romar,* 583 F.Supp.2d at 1189.

The only way Plaintiffs can move their general damage award out from the MICRA damage cap is to successfully demonstrate disparate screening. As noted above, it is Plaintiffs' burden to demonstrate the Hospital Defendants treated Ms. Gutierrez differently *from other patients*. The key issue, and what Plaintiffs' must demonstrate, is the screening provided to Ms. Gutierrez was disparate in relation to other, similarly situated patients who presented to Santa Rosa Memorial Hospital, not how she was treated in relation to her own prior visits or some idealized national standard.

### B. Plaintiffs Must Demonstrate Malice, Oppression, or Fraud by Clear and Convincing Evidence to Recover Punitive Damages

Plaintiffs can only recover punitive damages under ANY theory of liability if they demonstrate, by clear and convincing evidence, the Hospital Defendants acted with malice, oppression, or fraud. The federal courts have determined Code of Civil Procedure § 425.13 does not apply to EMTALA actions,

however, Civil Code § 3294 does. *Jackson v. E. Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997) (*Jackson II*). The Court held Section 425.13 is a procedural requirement and therefore, based upon an analysis of the *Erie Doctrine*, inapplicable to a federal EMTALA claim. *Id*. However, the Court did not stop its analysis there. It held Section 3294 was a "substantive law, as it establishes a *right* to recover punitive damages" therefore it is applicable to claim brought under EMTALA. *Id*. Importantly, Civil Code § 3294 requires <u>*clear and convincing evidence*</u> the defendant was "guilty of oppression, fraud, or malice." Civil Code § 3294(a). Section 3294 also defines malice, oppression, and fraud:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

*See* Civil Code § 3294(c)(1)-(3). To recover punitive damages requires acts which are intentional, willful, cruel or deceitful. Even a claim of "reckless disregard" is insufficient as it "does not meet the callous or "willful and conscious disregard" standard of section 3294." *Jackson II*, 980 F.Supp. at 1354.

The only possible way Plaintiffs can recover punitive damages on ANY of their claims is if they demonstrate, with clear and convincing evidence, the Hospital Defendants' actions towards Ms. Gutierrez were malicious, oppressive, or fraudulent. This is a high standard requiring a willful and conscious disregard of Ms. Gutierrez and not simply negligence, mistake, inadvertence, or even recklessness.

### III.   CONCLUSION

If Plaintiffs demonstrate the Hospital Defendants failed to stabilize Ms. Gutierrez prior to discharging her, any damages awarded secondary to that failure will be limited by the $250,000 cap set by MICRA. If Plaintiffs demonstrate the Hospital Defendants refused to screen Ms. Gutierrez or provided her a disparate screening in comparison to other similarly situated patients, any damages awarded will not be limited by the $250,000 cap set by MICRA. However, to recover punitive damages in addition to any award above, it is not sufficient for Plaintiffs to demonstrate the Hospital Defendants

1  violated EMTALA. The Plaintiffs must demonstrate, with clear and convincing evidence, the Hospital
2  Defendants' actions were malicious, oppressive, or fraudulent.

Respectfully submitted,

Dated: November 6, 2018

LA FOLLETTE, JOHNSON,
DE HAAS, FESLER & AMES

By: */s/*
    BRETT SCHOEL
    Attorneys for Defendants SANTA ROSA
    MEMORIAL HOSPITAL and ST. JOSEPH
    HEALTH